NESTOR L. CURRAULT, Justice Pro Tempore.*
Mark Wayne Thibodeaux was charged by bill of information with the attempted armed robbery of Geralyn Ann Hurley at the Hoot Owl Dairy Bar in Lake Charles, Louisiana, a violation of La.R.S. 14:27, 14:64. He pleaded not guilty to that charge but was found guilty of attempted simple robbery after a trial by jury. The trial judge sentenced the defendant to three and one-half years with the Louisiana Department of Corrections, to run consecutively with any sentence the defendant might receive as a result of probation revocation. Subsequently, a joint probation revocation/multiple offender hearing concluded with the finding that the accused was a probation violator as well as a multiple offender and the Court sentenced the defendant pursuant to Louisiana Revised Statute 15:529.1 to seven years imprisonment at hard labor. Defendant now appeals this conviction on the basis of one assignment of error.

Factual Synopsis

On April 2, 1978, the victim, Geralyn Hurley was employed at the Hoot Owl Dairy Bar in Lake Charles, Louisiana. Being approached by a young black male at the service window, she requested his order. At that time he reached through the window, grabbed her wrist and said, “Give it up, give it all up.” As she hesitated, attempting to comprehend the situation, she noticed the man was armed with a knife. She screamed and attempted to get away from him. Still holding her wrist, he lunged through the window and as Ms. Hurley tried to crawl away, the robber stabbed her in the shoulder. Hearing the screams, another employee gave chase to the retreating robber who got into a green car. Other witnesses gave chase long enough to get a good description of the car and the license plate numbers. Based upon the information given by the witnesses, Officer Gordon Fontenot at the Lake Charles City Police located the vehicle that same afternoon in the parking lot of an apartment complex a short distance away. Two black males were standing by the vehicle. After advising them of their rights, the officer questioned them concerning the car’s ownership. The defendant was then arrested. A subsequent search of the trunk resulted in the recovery of a pair of brown pants worn by the perpetrator during the robbery. The defendant was subsequently identified by all four witnesses.

Assignment of Error

The defendant contends the trial court erred when it prohibited him from putting on the clothes introduced into evidence and moving swiftly across the courtroom in order to demonstrate that the clothes were not his and it was impossible for him to have worn those clothes at the time of the offense.
*593 The record reflects that during the trial the State introduced the pants removed from the getaway car used in the crime. The pants had the words “ROYTHIBD” written inside.
On motion of the State, the jury was removed from the courtroom and, in their absence, the State asked the trial court to order the defendant to hold the pants up to him. The defense attorney then moved that the defendant be required to wear the pants. The State agreed and the defendant changed clothes. The jury was returned to the courtroom, and the defendant, dressed in the seized trousers, walked in front of the jury box and back to his seat. After two more witnesses were examined, the State rested.
Prior to the presentation of any testimony, the defense requested that the defendant again be allowed to don the pants that were previously exhibited, as well as the cap and glasses introduced into evidence, “for the purposes of showing the jury what the witnesses have testified as to what they saw for identification purposes; and in our attempt in the defense to show that there was no way for them to have identified this individual.”
The defense additionally requested that while the defendant was so dressed he was to move “rapidly [from the center doors of the court] to the radiator area in the southeast corner of the courtroom.” Although the trial court denied the defendant the opportunity to don the trousers again and run across the courtroom, the Court did permit the defendant to put on the hat and sunglasses before the jury. In the trial judge’s per curiam, he stated:
The court refused [the motion] for two principal reasons. Eyewitness identifications had been made by at least three (3) people who had seen defendant at the time of the offense, and immediately thereafter, at distances ranging from as near as three feet to about what would have been thirty feet, all outside any building and on a bright sunshiny day. The demonstration in the courtroom would have been in fluorescent light with the very dark old oaken walls as a background at distances ranging from about thirty to fifty feet from the jury. Additionally, and as the principal reason for the court’s refusal, counsel for the defendant and the State advised the court in chambers that defendant had gained a substantial amount of weight while awaiting trial; their estimate being approximately fifty pounds. Whether the weight gain was deliberate for the proposed demonstration was not known. Both counsel agreed that defendant could not wear the clothing in evidence; would in fact be unable to zip up the trousers.
The defense, in brief, cites State v. Tillett, 351 So.2d 1153 (La.1977) In Tillett, this Court reversed the lower court’s ruling that refused to allow the defendant to demonstrate his voice to the jury for their determination as to its qualities. The issue concerned whether or not defendant had a Spanish accent. The State could compel the defendant to speak since that did not violate his Fifth Amendment rights; therefore, one of the essential ingredients of due process is reciprocity. Thus, in Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), this Court held that the' defendant had a right to demonstrate his voice to the jury.
In differentiating this case from Tillett, this Court notes that the defendant had an opportunity to wear the pants, hat and glasses before the jury (albeit not to run in them), giving the jury a chance to see that the pants were too tight for him and how much of his face was obscured by the hat and glasses.
The trial judge deemed the second demonstration irrelevant. A trial judge’s ruling as to the relevancy of evidence should not be disturbed absent a showing of a clear abuse of discretion. State v. Joseph, 407 So.2d 712 (La.1981); State v. Alford, 384 So.2d 761 (La.1980).
Considering the facts presented in this case, this court does not find that the trial judge abused his considerable discretion.
Accordingly, this assignment lacks merit.
*594 DECREE
For the foregoing reasons, the sentence and conviction of the defendant is affirmed.

 Judges Nestor L. Currault, Jr. and Fred S. Bowes of the Twenty-Fourth Judicial District Court and Edward A. Dufresne, Jr. of the Twenty-Ninth Judicial District Court participated in this decision as associate justices pro tempore, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.